**In re C & B OIL CO., INC. Debtor(s).**

**Bankruptcy No. 84–00944.**

United States Bankruptcy Court, N.D. Ohio, W.D.

March 12, 1987.

Mary Ann Whipple, Toledo, Ohio for Robert O. Bartholomew.

Kevin Kenney, Sylvania, Ohio, for Sylvania Sav. Bank.

---

1. The underscorings represent the amendments of Pub.L. No. 99–554.

2. The effective date of the Act is November 26, 1986.

Edward F. Zoltanski, Toledo, Ohio, Trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Trustee's Objection to a Motion For Abandonment of Real Property by Sylvania Savings Bank Company. The parties have had two Hearings to argue the merits of their respective positions and the opportunity to respond to the arguments made by opposing counsel. Both parties have filed Briefs with the Court on this matter. The Court has reviewed these arguments, as well as the entire record in this case. Based upon that review and for the following reasons, the Court finds that the Trustee's Objection should be DENIED.

## FACTS

The facts necessary for the disposition of this case do not appear to be in dispute. Robert O. Bartholomew is the President and sole shareholder of the Debtor Corporation, C & B Oil Co., Inc. Carol M. Bartholomew is Vice President and Secretary-Treasurer.

On August 24, 1978, C & B Oil Co., Inc. (hereinafter "C & B Oil") obtained a commercial loan from Sylvania Savings Bank (hereinafter "Bank"). The loan was for $130,000.00. The promissory note evidencing the debt has three signatures upon it. Robert O. Bartholomew signed once individually and once as President of C & B Oil. Carol M. Bartholomew also signed the promissory note once as an individual. As security for the debt the Bank received a mortgage on one (1) parcel of corporate realty, liens on two (2) trucks, and a mortgage on the Bartholomew's personal residence, as well as an assignment of a life insurance policy insuring Robert O. Bartholomew.

The Debtor filed for bankruptcy under 11 U.S.C. Chapter 7. At the time of the filing of the Petition, the outstanding balance of the loan was an amount over $74,-000.00. The value of C & B Oil's corporate secured property will not be sufficient, by itself, to satisfy the amount owed the Bank. The value of C & B Oil's assets is roughly $25,000.00. The Bartholomew's personal residence has been appraised at $72,000.00, almost the full amount of the debt.

The Trustee argues that the doctrine of marshaling assets should be applied to compel the Bank to look to the personal assets of the Bartholomews before proceeding against the corporate assets. The Trustee seeks to thereby preserve the corporate assets for the benefit of the unsecured creditors. Some assets have been sold and the proceeds put in escrow pending the Court's decision on the marshalling issue.

The nature of the Bartholomew's obligation, whether as surety or guarantor, was not raised by either party in these proceedings.

## LAW

The first issue raised by the Bank in this matter is the Trustee's standing to bring the marshaling issue before the Court. The Trustee is bringing suit on behalf of the unsecured creditors. The majority rule does not allow unsecured creditors to raise the marshaling of assets doctrine. *See,* 53 Am.Jur.2d *Marshaling Assets* § 29; 24 O.Jur.3d *Creditors Rights* 917; *Reconstruction Finance Corp. v. Howell Motor Car Co.,* 31 Ohio N.P. (N.S.) 409 (C.P.1934). However, § 544(a) gives the Trustee the rights and powers of a lien creditor.

In addressing the question of a Trustee's 544(a) powers, the Bankruptcy Court for the Southern District of New York stated:

Neither the language of the statute nor its legislative history gives the slightest indication that Congress contemplated that such "strong arm" rights and powers are not to apply in a marshaling context. By stepping into the "overshoes" of such a creditor ... whether or not one exists, the trustee enjoys whatever rights and powers that status conveys under state law.

*In re Tampa Chain Co., Inc.,* 53 B.R. 772 (Bankr.S.D.N.Y.1985) (citations and footnotes omitted).

In Ohio, the rights of a creditor with a judicial lien are sufficient to invoke the marshaling doctrine. *Lake v. Doud,* 10 Ohio 415 (1841); *Stone v. Morris,* 4 Ohio Dec. Reprint 101, 102 (1878); 24 O.Jur.3d *Creditors Rights* § 917.

The Trustee has requested that the Court require the Bank to marshal assets in this case. The equitable doctrine of marshaling has a long history extending back to the English common law where it was founded on the principles of natural justice. *Green v. Ramage,* 18 Ohio 428 (1849).

■ Initially, it must be determined whether the state law of Ohio should be controlling in this case. The Bankruptcy Court's equitable powers can, and often do, supersede state law in order for the Courts to properly administer and enforce the provisions of the bankruptcy laws. *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). Nevertheless, because the doctrine of marshaling assets involves the nature and effect of liens, which are property interests, the laws of the State of Ohio should govern, absent controlling federal law.

The Supreme Court stated the general rule in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979):

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

440 U.S. at 55, 99 S.Ct. at 918, 59 L.Ed.2d at 141. *See also, In re Madeline Marie Nursing Home,* 694 F.2d 433, 436–39 (6th Cir.1982); *Matter of Willson Dairy Co.,* 30 B.R. 67 (Bankr.S.D.Ohio 1983).

The Ohio Court of Appeals restated the Ohio law on the marshaling of assets in *Homan v. Michles,* 118 Ohio App. 289, 194 N.E.2d 162 (1963):

[T]he doctrine of marshaling is a familiar one in equity, growing out of the equitable principle that a party having two funds to satisfy his demands shall not, by his election, disappoint a party who has only one of the funds upon which to rely, thus preventing him from exercising his right of recourse against the property or assets in question in an unreasonable manner or so as to satisfy his claim to the exclusion of such other claimants. Thus if a senior creditor has a lien on two different parcels of land, and a junior creditor has a lien on only one of such parcels and the prior creditor elects to take his whole demand out of the parcel of land on which they both have liens, the junior creditor is entitled either to have the senior creditor thrown upon the other fund or to have the prior lien assigned to him for his benefit ... [T]here is an important exception to the application of the doctrine. In order that the doctrine may be applicable, the rule is that the parties must be creditors of the same debtor, and there can ordinarily be no marshaling of assets if the two funds to which creditors may resort are not derived from a common source or are not in the hands of a common debtor.

118 Ohio App. at 290, 194 N.E.2d at 164. (citations omitted.)

The *Homan* Court cited *Mason v. Hull,* 55 Ohio St. 256, 45 N.E. 632 (1896) as one source for the "common debtor" rule. In examining the applicability of the marshaling doctrine the Supreme Court of Ohio observed:

In other words the several creditors must have a common debtor, or debtors; that is, all the parties seeking aid must be creditors of the same common debtor.

■ The main issue in this case, therefore, is whether the Bank actually has two funds from a common source. The Bank has the first mortgage on the corporate property and on the Bartholomew's home.

Under Ohio law the shareholder, even a sole shareholder, is not identical with the corporation in which shares are held. This is not changed by the fact that Mr. Bartholomew is also the President of C & B Oil. The Supreme Court of Ohio noted in *E.S. Preston Assoc., Inc. v. Preston,* 24 Ohio St.3d 7, 492 N.E.2d. 441 (1986):

> Courts have been reluctant to disregard the corporate entity and have done so only where the corporation has been used as a cloak for fraud or illegality or where the sole owner has exercised such excessive control over the corporation that it no longer has a separate existence.

24 Ohio St.3d at 11, 492 N.E.2d at 446.

The Trustee relies on a line of cases that hold that the pledging of personal assets by an officer or sole shareholder, in order to obtain a loan for the corporate debtor, is a contribution to the capital of the corporation. This theory was set forth in *Moser Paper Co. v. North Shore Publishing Co.,* 83 Wis.2d 852, 266 N.W.2d 411 (1978). The *Moser* decision has been followed in bankruptcy marshaling cases very similar to this one. *Matter of Multiple Services Industries, Inc.,* 18 B.R. 635 (Bankr.E.D.Wis. 1982). However, *Moser* is a statement of Wisconsin law. Those cases which correctly follow the case do so because the relevant state law is in accord with the *Moser* holding. Ohio law is not in accord with the *Moser* decision.

For the Trustee to prevail in Ohio, he must show a reason to disregard the corporate entity under Ohio law. No precise test for disregarding the protection of the corporate entity has been articulated by the courts, each case being regarded as "sui generis" and decidable on its own facts. *Bucyrus-Erie Co. v. General Products,* 643 F.2d 413, 418 (6th Cir.1981). The showing of fraud, illegality, inadequate capitalization, and cases of excessive control would be but a partial list of grounds for disregarding the corporate entity. The Trustee has not raised any such issue in this case. Consequently, the requirement of common debtors outlined in *Homan* is not satisfied, and application of the marshaling doctrine is not appropriate in this case. *Matter of Willson Dairy Co.,* 30 B.R. 67 (Bankr.S.D.Ohio 1983); *In re Tampa Chain Co. Inc.,* 53 B.R. 772 (Bankr.S.D. N.Y.1985).

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Trustee's Objection be, and hereby is, DENIED.

It is FURTHER ORDERED that the Motion For Abandonment of Real Property be, and is hereby, GRANTED.

It is FURTHER ORDERED that the funds held in escrow be applied in accordance with this Opinion.